Before the Full Commission on 13 September 1995, plaintiff made a Motion for Submission of Additional Medical Records. After careful consideration, plaintiff's motion is hereby DENIED.
Before the Full Commission on 13 September 1995, defendant made a Motion for Dismissal of Plaintiff's Appeal. The Full Commission has chosen to decide this case on its merits.
* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties at the relevant time.
2. The PMA Group was the carrier on the risk.
3. On August 14, 1990, the plaintiff sustained an admittedly compensable injury to his back, as a result of which the parties entered into a Form 21 Agreement for Compensation.
4. Pursuant to the Form 21, the plaintiff's average weekly wage was $476.75, which yields a compensation rate of $317.83, and the plaintiff received 132 and 6/7's weeks of temporary total disability compensation from September 10, 1990 through April 13, 1993.
5. A Form 24 Application to Stop Payment of Compensation was approved by the Commission on April 28, 1993.
6. The parties stipulated the following reports into evidence:
a. Dr. Russell Amundson — twelve pages;
b. Rowan Memorial Hospital — eight pages;
c. Lexington Memorial Hospital — twenty pages;
d. Dr. David N. Dupuy — two pages;
e. Dr. Todd Chapman — three pages;
f. Dr. dePerczel — two pages;
g. Dr. Charles Branch — four pages;
h. Dr. Robert G. Steele — two pages;
i. Blue Ridge Vocational — ten pages;
j. Comprehensive Rehabilitation Center — seven pages;
k. ERS — thirteen pages;
l. Charlotte Rehabilitation Hospital — sixteen pages; and
m. Dr. William Griffin — three pages.
7. The issue for determination is to what additional
benefits plaintiff is entitled as a result of the compensable injury.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a 34 year old male with a ninth grade education. Plaintiff's previous work experience had involved carpet and textile work as a manual laborer. At the time of the compensable injury on August 14, 1990, the plaintiff was working as a tree trimmer.
2. After the compensable injury, plaintiff was treated by Dr. Robert Steele who eventually performed an L4-5 laminectomy in October of 1990. On December 27, 1990, Dr. Steele noted that plaintiff had no leg pain and that he would allow plaintiff to return to work after the first of the year. Dr. Steele rated plaintiff as having a ten percent permanent partial disability to his back.
3. On January 22, 1991, plaintiff presented to Dr. Steele with complaints of right leg pain after getting up wrong from a chair. Dr. Steele believed plaintiff's right leg pain to be due to inflamed scar tissue, and he referred plaintiff to neurologist Dr. Russell Amundson in April of 1991.
4. An MRI taken in March of 1991 revealed some fibrosis, but no recurrent disc problem. The plaintiff complained of aching and numbness in the right leg to Dr. Amundson. A lumbar myelogram and post myelogram CT scan disclosed significant nerve root compression. Dr. Amundson diagnosed plaintiff as having a chronic pain syndrome.
5. On July 24, 1991, re-exploration of the prior surgery site was performed, following which plaintiff has experienced right buttock and right leg pain.
6. On or about April 6, 1993, the plaintiff enrolled in a work hardening program at Rehab Advantage.
7. In September of 1992, plaintiff was referred to Dr. Todd Chapman, an orthopedic surgeon, for further evaluation regarding possible medical procedures to alleviate plaintiff's pain, which plaintiff described as significant.
8. On November 3, 1992, Dr. Chapman was shown a videotape in which the plaintiff was lifting a go-cart off the ground and onto a support. After this activity, the plaintiff walked about with no significant limitations to his activity. Based upon the plaintiff's movements and activity as depicted in the videotape, Dr. Chapman concluded that plaintiff's condition did not require surgery. Dr. Chapman opined that there was a great discrepancy between plaintiff's office examination and what the plaintiff was doing on the videotape.
9. Dr. Chapman further elaborated that over 80 percent of his patients have already had surgery; therefore, he has a good understanding as to what additional procedures can do.
10. On November 13, 1992, Dr. Chapman rated plaintiff has having a fifteen percent permanent partial impairment as a result of the two surgical procedures.
11. Dr. Chapman reviewed a job description for a supervisor for tree trimming, and he approved this job as being within plaintiff's capabilities on April 5, 1993.
12. On April 15, 1993, the plaintiff was seen by Dr. William R. Griffin, Jr., an orthopedic surgeon, for an independent medical evaluation and functional capacity evaluation.
13. The functional capacity evaluation indicated plaintiff capable of light medium work, with a maximum lifting restriction of 35 pounds. There was evidence of symptom magnification and inconsistencies in the results; therefore, results were to be used as a minimum level of work and not as establishing a maximum.
14. In April of 1993, Dr. Griffin was provided a copy of the tree trimmer supervisor job description, which he approved.
15. Dr. Griffin reviewed the videotape of plaintiff working on go-carts. In the videotape, plaintiff engaged in squatting, bending, stooping, sitting, reaching overhead, working overhead and lifting with no indication of back dysfunction. The videotape also shows plaintiff driving a go-cart in a competitive situation, which required sitting in an extremely low and cramped position.
16. Plaintiff had regularly engaged in maintaining and racing go-carts prior to his injury in August of 1990. The typical go-cart utilized in this sport weighs 125 pounds and could travel at speeds of up to 100 miles per hour on dirt or asphalt tracks in 20 lap races or 10 lap heats. The cart has no shocks or springs.
17. Following the compensable injury, the plaintiff has participated in his hobby of go cart competition, and he stated that he had discussed this with his doctors. However, the records do not reflect this.
18. The plaintiff has made no effort to find work since April of 1993.
19. The plaintiff related to rehabilitation staff in 1992 that he did not wish to do the ground job with defendants as it would cut his pay tremendously.
20. The plaintiff continued to build go-cart motors in the shop at his home.
* * * * * * * * * * *
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff has failed to carry the burden of proving that he is entitled to any further temporary total disability compensation after April of 1993.
2. The plaintiff has made no effort to look for or obtain work with any employer, and the plaintiff improperly refused to accept a supervisor position which was approved as being within his capabilities.
3. The plaintiff retains a fifteen percent permanent partial impairment to his back as a result of the work-related injury, and he is entitled to 45 weeks of compensation.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay 45 weeks of permanent partial disability compensation to the plaintiff at the weekly rate of $317.83, subject to an attorney's fee herein approved. This sum has accrued and shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff shall be deducted from sums due plaintiff and paid directly to counsel.
3. Defendants shall pay the costs.
 S/ ___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ___________________ COY M. VANCE COMMISSIONER